UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

CHARLES DANIEL MILLER,

    Plaintiff,

vs.                                    Case No. 3:10-cv-355-MCR

MICHAEL ASTRUE, Commissioner of the
Social Security Administration,

    Defendant.
_____/

## MEMORANDUM OPINION AND ORDER[1]

This cause is before the Court on Plaintiff's appeal of an administrative decision denying his application for Social Security Benefits. The Court has reviewed the record, the briefs, and the applicable law. For the reasons set forth herein, the Commissioner's decision is **REVERSED** and **REMANDED** for proceedings not inconsistent with this opinion.

**I.    PROCEDURAL HISTORY**

Plaintiff filed an application for Supplemental Security Income ("SSI") on December 28, 2006, (Tr. 76, 79), with an alleged onset date of January 1, 2006. (Tr. 72). The Social Security Administration ("SSA") denied Plaintiff's claim initially and upon reconsideration. (Tr. 40-46, 50-52). Plaintiff requested a hearing before an Administrative Law Judge (the "ALJ") on July 17, 2007. (Tr. 53). The hearing took place on April 20, 2009 in Ocala, Florida. (Tr. 54). At the administrative hearing,

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. (Doc. 15).

Plaintiff amended his alleged onset of disability date to June 26, 2007. (Tr. 78). The ALJ issued an unfavorable decision on September 24, 2009. (Tr. 7). The Appeals Council denied Plaintiff's request for review on March 3, 2010. (Tr. 1-4). Plaintiff now seeks judicial review of the ALJ's final decision under 42 U.S.C. § 405(g).

## II.    NATURE OF DISABILITY CLAIM

### A.    Basis of Claimed Disability

Plaintiff claims to be disabled since June 26, 2007 due to severe mental health problems, osteoarthritis, and degenerative disc disease, (Tr. 78; Doc. 13, p.2), as well as problems with his right knee, right hip, and pain in his right knee, back, and right shoulder. (Tr. 31, 84, 91, 109, 114, 193-94).

### B.    Summary of Applicable Evidence Before the ALJ

Plaintiff was 49 years of age at the time the ALJ conducted the April 20, 2009 administrative hearing. (Tr. 20, 22). At the hearing, Plaintiff stated he had an eighth grade education with a history of special education and alleged illiteracy. (Tr. 22-23, 34-35). Plaintiff's school records also note he was in special education. (Tr. 137-51). In addition, at the hearing, Plaintiff stated he was incarcerated from 1990 to 1999. (Tr. 25). Finally, Plaintiff had past relevant work experience as a landscaper (Tr. 32, 193).

Plaintiff claims to be disabled since June 26, 2007 (Tr. 78) due to severe mental health problems, including schizophrenia, depression and bipolar disorder, and problems with his right knee, right hip, and right shoulder along with pain in his right knee, right hip, back, and right shoulder. (Tr. 23, 31, 84, 91, 109, 114, 121, 193-94). As this appeal deals exclusively with Plaintiff's non-exertional limitations and mental

impairments, the Court will limit its discussion to the evidence relating to Plaintiff's mental health.

Plaintiff received treatment for his mental impairments at Meridian Behavioral Healthcare ("Meridian") with records of his treatment there spanning a period from May 19, 1997 to December 11, 2008.  (Tr. 232-89).  The records indicate Plaintiff has eight documented suicide attempts throughout his life (Tr. 281), suicidal ideations (Tr. 236), as well as consistent reports of auditory hallucinations telling him to harm himself (Tr. 236) or to do "stupid things[,]" whether to himself or in general (Tr. 242, 244).

In particular, Plaintiff received treatment at Meridian on June 26, 2007, where he was examined by Dr. Llinas, a psychiatrist.  (Tr. 257-59, 264-66).  As part of his evaluation of Plaintiff, Dr. Llinas noted in the "Specific Strengths, Needs, Abilities, Preferences, And [sic] Challenges" ("SNAPC") section of the psychiatric evaluation form that Plaintiff was "[d]isabled - unable to work – dangerous to other people in a work place because he becomes enraged with little or no provocation."  (Tr. 265).  Dr. Llinas also stated in the "Case Formulation" section of the form that Plaintiff was a "48-year-old white married disabled male with a lifetime history of seriously disturbed behavior – history of multiple drug use, sexual misdeeds he did not discuss in detail, angry, explosive and [] behavior, self destructive feats, incarceration, inability to keep a job." (Tr. 265) (omission due to illegibility).  In the same section, Dr. Llinas continued, "I believe he has a long term bipolar disorder, and has used drugs and medicines in the past for self treatment."  (Tr. 265).  Later in the "Treatment Recommendations" section of the form, Dr. Llinas wrote regarding Plaintiff, "[a]s above – I think he also needs anger management therapy, but he needs to be more stable from his psychosis – has no

insurance – will re-apply for disability." (Tr. 266). Finally, Dr. Llinas concluded, "[i]n the workplace, if ever, he would be not only a danger to himself, but to others as well, a fact that should be considered by Social Security staff." (Tr. 266).

Prior to his Meridian visit with Dr. Llinas, Plaintiff underwent a consultative psychological evaluation exam on March 13, 2007 with a consultative psychologist, Dr. Linda Abeles, Ph.D. (Tr. 169). In her report, dated March 27, 2007, Dr. Abeles noted in the "Clinical Impressions" section that Plaintiff's presentation during the exam "was consistent with both Malingering and a Personality Disorder." (Tr. 170). Dr. Abeles wrote that Plaintiff:

> presented himself as disoriented being unable to name the year or month. He named the president of the United States as "Richard Gere" and went on to present himself as unable to recite the alphabet. Predictably, the claimant provided incorrect responses on the mental status examination. For example, when asked the similarities between a dog and a lion, he reported that both, "Attack you." When asked, "[W]hy do people wash clothes?" [h]e reported, "Because they pile up if you don't." Mr. Miller reported experiencing auditory and visual hallucinations and on several occasions during this evaluation interrupted this examiner from talking, claiming that he could hear[] "the devil talking."

(Tr. 170). Based on this examination, Dr. Abeles noted in the "Summary and Recommendations" section of her report Plaintiff "appeared to be malingering." (Tr. 171). Toward the end of this section, she concluded:

> Mr. Miller's level of psychological functioning would probably preclude him from obtaining or maintaining employment. He would appear unmotivated to work. Given his history of both antisocial behaviors as well as polysubstance dependency, he would not appear competent to manage any monies to which he may be entitled. Prognosis for future success in the workplace is considered poor.

(Tr. 171).

-4-

### C. Summary of the ALJ's Decision

A plaintiff is entitled to disability benefits when he is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than 12 months. 42 U.S.C. §§ 416(i), 423(d)(1)(A); 20 C.F.R. §416.905. The ALJ must follow five steps in evaluating a claim of disability. See 20 C.F.R. §416.920. First, if a claimant is working at a substantial gainful activity, he is not disabled. 29 C.F.R. § 416.920(a)(4)(i). Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled. 20 C.F.R. § 416.920(a)(4)(ii). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404 Subpart P, Appendix 1, he is disabled. Id. § 416.920(a)(4)(iii). Fourth, if a claimant's impairments do not prevent him from doing past relevant work, he is not disabled. Id. § 416.920(a)(4)(iv). Fifth, if a claimant's impairments (considering his residual functional capacity, age, education, and past work) prevent him from doing other work that exists in the national economy, then he is disabled. Id. § 416.920(a)(4)(v). Plaintiff bears the burden of persuasion through step four, while at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146, 107 S. Ct. 2287 n.5 (1987).

In this case, the ALJ found Plaintiff had not engaged in substantial gainful activity since December 28, 2006 (Tr. 12), the application date. (Tr. 40). At step two, the ALJ found Plaintiff suffered from the following severe impairments: degenerative disc disease and an affective mood disorder. Id. At step three, the ALJ determined Plaintiff

did not have an impairment or combination of impairments that met or equaled any listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Id. The ALJ further found Plaintiff had the residual functional capacity ("RFC") to perform light work,[2] "except the claimant [was] limited to performing simple repetitive task[s] in a low stress work environment." (Tr. 13). In reaching this conclusion, the ALJ found Plaintiff's statements regarding the intensity, persistence, and limiting effects of his alleged symptoms were not credible to the extent they were inconsistent with the ALJ's RFC assessment. Id. at 14.

At step four, the ALJ determined Plaintiff could not perform any of his past relevant work. Id. at 16. Accordingly, the ALJ proceeded to step five where, relying on the Medical-Vocational Guidelines (the "Grids"), 20 C.F.R. Part 404, Subpt. P, App. 2, Rule 202.17, he determined Plaintiff could perform other jobs existing in significant numbers in the national economy and therefore, was not disabled. Id. at 16-17. The ALJ reached this finding despite Plaintiff's limitation to light work consisting of simple repetitive tasks in a low stress work environment. Id. at 17. The ALJ found that these "additional limitations ha[d] little or no effect on the occupational base of unskilled light work." Id. Thus, the ALJ found Plaintiff was not disabled within the meaning of the Social Security Act. Id.

---

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. §416.967(b).

**III. ANALYSIS**

    **A.**    <u>**The Standard of Review**</u>

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, <u>McRoberts v. Bowen</u>, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence. <u>Richardson v. Perales</u>, 402 U.S. 389, 390, 91 S. Ct. 1420 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. <u>Foote v. Chater</u>, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing <u>Walden v. Schweiker</u>, 672 F.2d 835, 838 (11th Cir. 1982) and <u>Richardson</u>, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. <u>Edwards v. Sullivan</u>, 937 F.2d 580, 584 n.3 (11th Cir. 1991); <u>Barnes v. Sullivan</u>, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. <u>Foote</u>, 67 F.3d at 1560; <u>accord</u> <u>Lowery v. Sullivan</u>, 979 F.2d 835, 837 (11th Cir. 1992) (explaining how the court must scrutinize the entire record to determine reasonableness of factual findings).

The district court will reverse a Commissioner's decision on plenary review, however, if the decision applies incorrect law or if the decision fails to provide the district

court with sufficient reasoning to determine the Commissioner properly applied the law. Keeton v. Department of Health and Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994).

### B. Issues on Appeal

Plaintiff argues three issues on appeal. First, Plaintiff contends the ALJ improperly relied upon the Grids instead of obtaining the testimony of a vocational expert. (Doc. 13, pp. 6-7). Second, Plaintiff argues the ALJ improperly found Plaintiff had a "limited education." Id. at 7. Third, Plaintiff contends the ALJ abused his discretion and failed to weigh all the evidence in the case. Id. at 8-10. Because the Court finds Plaintiff's third argument to be determinative, it will begin its analysis with that issue.

#### 1. Whether the ALJ abused his discretion and failed to weigh all the evidence.

Plaintiff argues the ALJ abused his discretion and failed to weigh all the evidence by failing to state why the ALJ rejected Dr. Abeles's opinion as well as by failing to state the weight the ALJ gave to Plaintiff's medical records from Meridian, which document Plaintiff's mental health treatment from 1997 to 2008. Id. at 8-10. The Commissioner responds the ALJ properly considered the relevant evidence and opinions of medical sources because there is "no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision" as long as his decision is not simply "a broad rejection[,]" which would not allow a court to conclude the ALJ had considered all the evidence. (Doc. 19, p.8) (quoting Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005)). The Commissioner also argues that "[a]n ALJ's failure to cite specific evidence

-8-

does not indicate that such evidence was not considered." (Doc. 19, p.8) (quoting Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998)).

The ALJ is required to consider all of the evidence in the claimant's record when making a disability determination. See 20 C.F.R. § 416.920(a). In addition, the ALJ must state the weight afforded to the evidence considered. Ryan v. Heckler, 762 F.2d 939, 941 (11th Cir. 1985). Specifically, the judge "should state the weight he accords to each item of impairment evidence and the reasons for his decision to accept or reject that evidence." Lucas v. Sullivan, 918 F.2d 1567, 1574 (11th Cir. 1990). Indeed, "[u]nless the [ALJ] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's 'duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.'" Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981) (quoting Stawls v. Califano, 596 F.2d 1209, 1213 (4th Cir. 1979)). Although the ALJ is required to consider all of the evidence, he is not required to discuss all of the evidence presented, but rather must explain why "significant probative evidence has been rejected." Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984).

Plaintiff argues the ALJ disregarded Dr. Abeles's findings that Plaintiff's "level of psychological functioning would probably preclude him from obtaining or maintaining employment" and that Plaintiff's "[p]rognosis for future success in the workplace is considered poor." (Tr. 171). However, quoting the report more fully, Dr. Abeles found "[plaintiff's] level of psychological functioning would probably preclude him from obtaining or maintaining employment. He would appear unmotivated to work." (Tr.

171). Dr. Abeles also concluded at the beginning of her report summary that Plaintiff "appeared to be malingering." (Tr. 171). The ALJ cited Dr. Abeles's findings that Plaintiff "appeared to be malingering about the intensity of his symptoms" and that he "appeared unmotivated to work." (Tr. 15). The ALJ wrote he "agree[d] with Dr. Abeles that the claimant did not put forth credible effort during the consultative [examination]." (Tr. 16). The ALJ also stated, "[I] give[] great weight to the opinion of Dr. Abeles who conducted a thorough examination of the claimant[.] [S]he is a licensed psychologist, and she reviewed the claimant's medical records[] and relied upon her own observations in reaching her conclusions." (Tr. 16). Given the full context, substantial evidence existed to enable the ALJ to conclude that Dr. Abeles was referring to Plaintiff's malingering and lack of motivation when she stated Plaintiff's "level of psychological functioning would probably preclude him from obtaining or maintaining employment." (Tr. 171). Furthermore, the ALJ's statement that he gave great weight to Dr. Abeles's opinion (Tr. 16) supports this interpretation. Thus, rather than rejecting the opinion of Dr. Abeles and failing to state why as Plaintiff argued, the ALJ accepted Dr. Abeles's opinion and gave it great weight.

Next, Plaintiff argues the ALJ erred by failing to state what weight he gave to the opinions of Plaintiff's treating physicians from Meridian. Specifically, Plaintiff points to a psychiatric evaluation form filled out by Dr. Llinas where in the section entitled "Specific Strengths, Needs, Abilities, Preferences, And [sic] Challenges" ("SNAPC"), Dr. Llinas noted, "Disabled – unable to work – dangerous to other people in a work place because he becomes enraged with little or no provocation[,]" in reference to Plaintiff. (Tr. 265). The Commissioner argues examination of this medical record "reveals that the

practitioner was merely noting Plaintiff's subjective complaints as part of his evaluation[,]" because in the "Treatment Recommendations" section of the psychiatric evaluation form where Dr. Llinas lists his opinion, he did "not indicate Plaintiff [was] disabled or unable to work."[6]  (Doc. 19, p. 9).  Hence, the Commissioner claims, the ALJ was not required to state what weight he gave to the treating medical source's opinion that Plaintiff was unable to work because the records do not show Plaintiff was unable to work.  Id.

Although the Commissioner makes a plausible argument, the Commissioner's interpretation of the records is an open question.  When the ALJ does not properly weigh the evidence, the Eleventh Circuit has refused to affirm an ALJ's decision even where some post hoc rationale might have supported the ALJ's conclusion. Shinn v. Commissioner of Social Sec., 391 F.3d 1276, 1282, 1287 (11th Cir. 2004) (finding that where the ALJ never mentioned particular medical sources in his ruling, those sources' medical reports could not justify the ALJ's decision); Owens v. Heckler, 748 F.2d 1511, 1516 (11th Cir. 1984) (declining to affirm "simply because some rationale might have supported the ALJ's conclusion").  In his opinion, the ALJ never discussed this section of Plaintiff's medical records.  As such, the Court cannot find the ALJ decided Dr. Llinas's notes in the SNAPC section of the form were merely descriptive.  Accordingly, the Commissioner cannot rehabilitate the ALJ's failure to consider these records by merely asserting a post hoc justification.

---

[6] Dr. Llinas's psychiatric evaluation form spans pages 257-59 and 264-66 of the court record.  (Tr. 257-59, 264-66). Pages 260-263 of the court record relate to some of Plaintiff's other treatment dates with medical sources other than Dr. Llinas, and were erroneously inserted between the pages of Dr. Llinas's form.

More importantly, the ALJ's failure to consider the evidence of Dr. Llinas's opinion found in the "Treatment Recommendations" section of his psychiatric evaluation form is more troubling than his failure to do so with respect to Dr. Llinas's notes in the SNAPC section. In the "Treatment Recommendations" section of the form, Dr. Llinas states: "[i]n the workplace, if ever, [Plaintiff] would be not only a danger to himself but to others as well, a fact that should be considered by social security staff."[7] (Tr. 266). That the ALJ did not address this statement by a treating medical source suffices to have the ALJ revisit his decision in order to consider this evidence. As noted above, while the ALJ is not expected to discuss every piece of evidence, he must explain why "significant probative evidence has been rejected." Vincent, 739 F.2d at 1394-95. Here, Dr. Llinas's opinion that Plaintiff would be a danger to himself and others in the workplace is significantly probative in that it conflicts with the ALJ's decision that Plaintiff could function in the workplace.

Ultimately, the ALJ failed to address all the evidence because the ALJ did not address Dr. Llinas's evaluation as well as the opinions of other medical sources from Meridian. Indeed, the only time the ALJ addressed Plaintiff's Meridian medical records, he incorrectly noted, "[a]lthough the medical record does contain mental health records; however, <u>these records are limited to periods when the claimant was incarcerated</u>." (Doc. 13, p.15) (emphasis added). Although Plaintiff was incarcerated from 1990 to 1999 (Tr. 25), Plaintiff's Meridian medical records span a period from 1997 to 2008 (Tr. 232-89), which includes times during which Plaintiff was not incarcerated. Specifically,

---

[7] This statement was not merely descriptive, even by the Commissioner's reasoning, since it was in a section noting Dr. Llinas's opinion.

Dr. Llinas conducted the psychiatric evaluation in question on June 26, 2007 (Tr. 257), seven or eight years after Plaintiff had last been incarcerated. Thus, by incorrectly relegating all of Plaintiff's mental health records to the period of Plaintiff's incarceration (Tr. 15), the ALJ demonstrated that he did not consider all of Plaintiff's medical records. As the Court finds some of this evidence to be significantly probative, the ALJ was required to weigh it and to clearly state his reasons for accepting or rejecting it. See Cowart, 662 F.2d at 735. Accordingly, the Court will remand this case and directs the ALJ to consider Plaintiff's medical records from Meridian and to specify the weight, if any, given to that evidence.

> **2. Whether the ALJ improperly relied upon the Grids instead of obtaining testimony from a vocational expert to determine Plaintiff could perform other work.**

Plaintiff contends the ALJ erred by relying upon the Grids, 20 C.F.R. pt. 404, subpt. P, app. 2, in determining Plaintiff could perform other work at step five instead of relying upon a vocational expert because the ALJ found Plaintiff could not perform a full range of work at the "light work" level of exertion and because Plaintiff had non-exertional impairments that significantly limited his basic work skills. (Doc. 13, pp.6-7). The Commissioner responds the ALJ properly relied on the Grids to determine Plaintiff could perform other work because Plaintiff failed to show he could not perform the full range of light work and failed to show he had non-exertional limitations which prevented him from performing a wide range of work at the light exertional level. (Doc. 19, p.5).

The ALJ found Plaintiff had the RFC to perform light work, but limited Plaintiff "to performing simple repetitive task[s] in a low stress work environment." (Tr. 13, Finding 4). Once the ALJ assesses a claimant's RFC, the ALJ proceeds to determine what, if

-13-

any, work the claimant can perform. If the claimant cannot perform any of his past relevant work, the burden shifts to the Commissioner to show that there is other work in the national economy that the claimant can perform. Francis v. Heckler, 749 F.2d 1562, 1566 (11th Cir. 1985). The ALJ "may use the [G]rids to determine whether other jobs exist in the national economy that a claimant is able to perform. However, '[e]xclusive reliance on the [G]rids is not appropriate *either* when [the] claimant is unable to perform a full range of work at a given residual functional level *or* when a claimant has non-exertional impairments that significantly limit basic work skills.'" Phillips v. Barnhart, 357 F.3d 1232, 1242 (11th Cir. 2004) (emphasis in original) (quoting Francis, 749 F.2d at 1566); see also Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Wolfe v. Chater, 86 F.3d 1072, 1077 (11th Cir. 1996); Walker v. Bowen, 826 F.2d 996, 1002-03 (11th Cir. 1987); Sryock v. Heckler, 764 F.2d 834, 836 (11th Cir.1985). The Eleventh Circuit has interpreted "significantly limit basic work skills" to mean "limitations that prohibit a claimant from performing 'a wide range' of work at a given work level." Phillips, 357 F.3d at 1243 (citing Foote, 67 F.3d at 1559. Finally, if the ALJ finds any non-exertional limitations, the ALJ is required to "'make a specific finding as to whether the non-exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations.'" Foote, 67 F.3d at 1559 (quoting Johnson v. Shalala, No. CA 92-0844-CB-C, 1993 U.S. Dist. LEXIS 8553 (S.D. Ala. May 27, 1993) (in turn quoting Welch v. Bowen, 854 F.2d 436, 439 (11th Cir. 1988)).

The first inquiry, whether a claimant is able to perform a full range of work at a given residual functional level, only applies to exertional limitations. Brown v. Astrue,

No. CV608-036, 2009 WL 2135005, at *4 (S.D. Ga. July 15, 2009). In the instant case, the ALJ explicitly found Plaintiff had no such limitations. (Tr. 14, 16-17). As the ALJ found no exertional limitations, the determination of whether he could rely exclusively on the Grids was limited to whether Plaintiff's non-exertional limitations prevented him from performing a wide range of work. As noted above, the ALJ found Plaintiff had the RFC to perform light work limited to simple and repetitive tasks in a low stress work environment. (Tr. 13, Finding 4). Plaintiff argues the ALJ clearly indicated Plaintiff could not perform a full range of work at the light level because of the limitation to simple and repetitive tasks in a low stress environment. (Doc. 13, pp. 6-7). In light of this alleged inability to perform a full range of work at the given exertion level of "light work," Plaintiff cites Jones to assert the ALJ's exclusive reliance on the Grids was inappropriate. Id. at 6. The Court does not agree.

First, the Grids take administrative notice of the number of unskilled jobs at the various exertional levels that exist throughout the national economy. 20 C.F.R. pt. 404, subpt. P, app.2, §200.00(b). Unskilled work is work that "needs little or no judgment to do simple duties that can be learned on the job in a short period of time." Id. § 416.968(a). Therefore, the definition of unskilled work encompasses simple tasks. On the other hand, Plaintiff's limitations to repetitive tasks and working in a low stress work environment are not contained within the definition of unskilled work. Id.; Vuxta v. Commissioner of Social Sec., 194 F.App'x. 874, 878 (11th Cir. 2006). Hence, the ALJ could not have supported his finding on the Grids' administrative notice of unskilled jobs at the light work exertional level. Vuxta, 194 F.App'x at 878. Instead, the ALJ was required to determine whether the limitation to repetitive tasks in a low stress

environment prevented Plaintiff from performing a wide range of work. In his decision, the ALJ explicitly found the additional limitations had "little or no effect on the occupational base of unskilled light work." (Tr. 17); see also Vuxta, 194 F.App'x at 878 (finding that when an ALJ determination that a limitation to repetitive tasks did not preclude a claimant from performing a wide range of work at a given level, a disability determination relying exclusively on the Grids was appropriate). Accordingly, the ALJ did not err in relying exclusively on the Grids. However, because the ALJ failed to consider all of Plaintiff's Meridian medical records and the Court is remanding the case, the Court will ask the ALJ, while he is considering Plaintiff's Meridian medical records, to determine whether they disclose any additional non-exertional limitations that would prevent Plaintiff from performing a wide range of light work.

### 3. Whether the ALJ erred in finding Plaintiff had a limited education.

Plaintiff argues no substantial evidence supports the ALJ's finding that Plaintiff had a limited education. (Doc. 13, pp. 7-8). The Regulations note that "[e]ducation is primarily used to mean formal schooling or other training which contributes to [a claimant's] ability to meet vocational requirements[.]" 20 C.F.R. § 416.964(a). The Regulations further state that the importance of a claimant's educational background "may depend upon" what the claimant has done with his education in a work or other setting, as well as how much time has passed between the beginning of a claimant's mental or physical impairment and when the claimant last had any formal education. § 416.964(b). Moreover, "formal education that you completed many years before your impairment began, or unused skills and knowledge that were a part of your formal

education, may no longer be useful or meaningful in terms of your ability to work." Id. Because of this, the numerical grade level a claimant has completed in school "may not represent [his] actual educational abilities[,]" which may be higher or lower. Id. However, absent contradictory evidence, an ALJ can use a claimant's numerical grade level to determine the claimant's educational abilities. Id. In addition, the Regulations define illiteracy as "the inability to read or write." § 416.964(b)(1). An ALJ will consider a claimant illiterate "if the person cannot read or write a simple message such as instructions or inventory lists even though the person can sign [his] name." Id. "Generally, an illiterate person has had little or no formal schooling." Id. On the other hand, the Regulations consider a claimant as having a "limited education" when he has "ability in reasoning, arithmetic, and language skills, but not enough to allow a person with these educational qualifications to do most of the more complex job duties needed in semi-skilled or skilled jobs." § 416.964(b)(3). The Regulations consider "a 7th grade through the 11th grade level of formal education" a limited education. Id.

  In the instant case, although Plaintiff alleged illiteracy (Tr. 22-23) and a history of special education (Tr. 137-51), the ALJ addressed neither and found Plaintiff had a limited education and could communicate in English. (Tr. 16, Finding 7). However, even if the ALJ erred by not addressing Plaintiff's alleged illiteracy or history of special education, such an error would be harmless because whether the ALJ ultimately determined Plaintiff was illiterate or had a limited education, the ALJ would still have found Plaintiff was not disabled under either Rule 202.16 or Rule 202.17 of the Grids, as both rules direct a finding of not disabled. See Caldwell v. Barnhart, 261 F.App'x. 188, 190 (11th Cir. 2008) (finding that despite ALJ error, the ALJ's decision stands because

the error was harmless error, error whose correction would not result in a contradiction of the ALJ's ultimate findings) (citing Diorio v. Heckler, 721 F.2d 726, 728 (11th Cir. 1983)). Accordingly, the ALJ's failure to address Plaintiff's alleged illiteracy and history of special education in finding Plaintiff had a limited education does not require remand as even if it was error, it would be harmless error.

## IV.    CONCLUSION

For the foregoing reasons, the ALJ's decision is hereby **REVERSED** and **REMANDED** pursuant to sentence four, 42 U.S.C. 405(g). On remand, the ALJ shall (1) weigh all the evidence in the case, including all of Plaintiff's Meridian medical records, giving sufficient consideration to opinions of Dr. Llinas; (2) while considering all of the evidence, especially all of the Meridian medical records, determine whether Plaintiff has any non-exertional limitations that prevent him from performing a wide range of work at his given exertional level; and (3) conduct any other proceedings deemed appropriate. The Clerk of the Court is directed to enter judgment consistent with this opinion, and, thereafter, to close the file.

Should this remand result in the award of benefits, Plaintiff's attorney is hereby granted, pursuant to Rule 54(d)(2)(B), an extension of time in which to file a petition for authorization of attorney's fees under 42 U.S.C. § 406(b), until thirty (30) days after the receipt of a notice of award of benefits from the Social Security Administration. **This order does not extend the time limits for filing a motion for attorney's fees under the Equal Access to Justice Act**.

**DONE AND ORDERED** at Jacksonville, Florida, this  6th  day of September, 2011.

_Monte C. Richardson_
MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record